**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEPHEN BROWN, JR. and | : | |
| MATTHEW JURY, Individually and | : | Civil Action No. 1:10-CV-0514 |
| on behalf of all others similarly situated, | : | Chief Judge Yvette Kane |
|     Plaintiffs | : | |
| | : | |
|     v. | : | |
| | : | |
| TRUEBLUE, INC., f/k/a LABOR | : | |
| READY, INC., and LABOR READY | : | |
| NORTHEAST, INC., | : | |
|     Defendants | : | |

<u>**MEMORANDUM**</u>

Plaintiffs Stephen Brown and Matthew Jury filed suit against Defendants TrueBlue and

Labor Ready Northeast alleging violations of the Pennsylvania Minimum Wage Act, 43 Pa. Stat.

§ 333.101 et seq., Pennsylvania's Wage Payment and Collection Law, 43 Pa. Stat. § 260.1 et

seq., Pennsylvania's Check Casher Licensing Act, 63 Pa. Stat. § 2301 et seq., and the Fair Labor

Standards Act, 29 U.S.C. § 201 et seq. (Doc. No. 1.) Plaintiffs moved for class certification of

two classes pursuant to Rule 23 of the Federal Rules of Civil Procedure and moved for

certification of one collective action brought pursuant to the FLSA. (Doc. Nos. 27, 42.) Just

prior to the hearing on class certification, Defendants filed a motion to compel arbitration. (Doc.

No. 63.) The Court continued the hearing on class certification pending the resolution of the

motion to compel arbitration. (Doc. No. 66.) The motion to compel arbitration has been fully

briefed, and the Court held argument on the motion on September 8, 2011. For the reasons

stated more fully herein, the Court will grant Defendants' motion to compel arbitration and stay

these proceedings pending the completion of arbitration.

**I.      BACKGROUND**

### A.      Factual Background

Defendants provide temporary staffing services, whereby Defendants send their employees to do work for a local business seeking short-term labor.  (Doc. No. 1 ¶¶ 16, 23.) Defendants' employees report to a branch office by 7:00 a.m., where Defendants provide their employees with a work assignment.  (Id. ¶ 24.)  The employees are paid each day they work upon completion of the work day.  (Id. ¶ 23.)  When the employees have completed their work for the day, they return to Defendants' branch office where they are given the option of being paid by check or by cash voucher.  (Id. ¶ 28.)  If an employee elects to use a cash voucher, the employee is given a voucher and a pin number, which the employee may redeem for cash at one of the cash dispensing machines located in the branch offices.  (Id. ¶ 28.)  Employees are charged a fee for using the cash dispensing machines totaling one dollar plus any change in the employee's net pay.[1]  (Id. ¶¶ 28-29.)  Plaintiffs, Defendants' employees, allege that the fees applied when using the cash dispensing machines often result in Defendants' employees being paid less than the prevailing minimum wage.  (Id. ¶ 32.)

Both Plaintiffs Brown and Jury signed employment agreements.  (Doc. Nos. 67-1, 67-2.) Those employment agreements included an "Employment and Dispute Resolution" section.

---

[1] For example, in the cash voucher submitted by Plaintiffs in support of their motion for class certification, the voucher lists Plaintiff Brown's daily gross pay at $58.00, representing eight hours of work at $7.25 per hour.  (Doc. No. 27-8.)  It lists deductions totaling $6.25, including $0.03 for Pennsylvania unemployment taxes, $0.84 for Medicare, $1.78 for Pennsylvania state withholding, and $3.60 for social security.  (Id.)  Plaintiff Brown's net pay is listed as $51.75.  (Id.)  The cash dispensing machine fee is listed as $1.75, representing one dollar plus the seventy-five cents in change in Plaintiff Brown's net pay.  (Id.)  Also included on the voucher is a statement that the cash dispensing machine charges a fee and if the employees do not wish to accept this fee, they may request a check.  (Id.)  The voucher further directs them to "[a]sk the branch employees where you may be able to cash Labor Ready payroll checks for no fee."  (Id.)

That section included, as a condition of Plaintiffs' employment, an arbitration provision

providing:

> 1. Arbitration, Waiver of Jury Trial.  Labor Ready and I agree that
> any claim arising out of or relating to this Agreement, or the breach
> of this Agreement, or my application, employment, or termination of
> employment, shall be submitted to and resolved by binding
> arbitration under the Federal Arbitration Act.  Labor Ready and I
> agree that all claims shall be submitted to arbitration including, but
> not limited to, claims based on any alleged violation of a constitution,
> or any federal, state, or local laws; Title VII, claims of
> discrimination, harassment, retaliation, wrongful termination,
> compensation due or violation of civil rights; or any claim based in
> tort, contract, or equity.  Any arbitration between Labor Ready and
> I will be administered by the American Arbitration Association under
> its Employment Arbitration Rules then in effect.  Labor Ready agrees
> to pay for the arbiter's fees where required by law.  The award
> entered by the arbitrator will be based solely upon the law governing
> the claims and defenses pleaded, and will be final and binding in all
> respects.  In any claim or jurisdiction where this agreement to resolve
> claims by arbitration is not enforceable, Labor Ready and I agree to
> submit our claims for resolution by a bench trial (trial by judge)
> specifically waiving a jury as the ultimate fact finder.

(Id.)  Plaintiffs Brown and Jury signed and dated their employment agreements on September 23,

2008, and July 16, 2009, respectively.  (Id.)

The "Employment and Dispute Resolution" sections further included agreements to

pursue relief via arbitration individually, rather than on a class basis.  Specifically, Plaintiff

Brown's agreement provides:

> 2. Class Actions.  In any such arbitration, or in a court of competent
> jurisdiction if arbitration is prohibited by law, neither Labor Ready
> nor I shall be entitled to join or consolidate claims as a representative
> or member of a class, representative, or collective action.

(Doc. No. 67-1.)  Plaintiff Jury's agreement, under the heading "2.  Representative Actions"

provides that: "In any arbitration, or in a court of competent jurisdiction if arbitration is

3

prohibited by law . . . .  **I must give my <u>written consent</u> to be represented in a lawsuit against Labor Ready and I will not represent anyone else without their written permission.**" (Doc. No. 67-2 (emphasis in original).)

### B.     Procedural History

Plaintiffs initiated this action by filing a complaint with this Court on March 7, 2010. (Doc. No. 1.)  Defendants filed an answer with affirmative defenses on May 17, 2010.  (Doc. No. 16.)  Notably, Defendants did not note the existence of an agreement to arbitrate in their answer. (<u>Id.</u>)  Plaintiffs filed their first motion for class certification on December 23, 2010.  (Doc. No. 27.)  Plaintiffs filed a second motion for class certification on March 8, 2011.  (Doc. No. 42.)  On March 18, 2011, the Court scheduled a hearing on Plaintiffs' two motions for class certification to take place on June 10, 2011.  (Doc. No. 52.)  Briefing continued on the motions for class certification through May 10, 2011, when Defendants filed a motion for leave to file a sur reply brief in opposition to the second motion for class certification.  (Doc. No. 61.)  The Court granted Defendants' motion on May 26, 2011.  (Doc. No. 62.)

On June 7, 2011, fifteen months after Plaintiffs filed their complaint and three days before the hearing on class certification was scheduled to be held, Defendants filed a motion to compel arbitration.  (Doc. No. 63.)  The Court issued an order continuing the hearing on the motions for class certification on June 7, 2011.  (Doc. No. 66.)  The Court heard argument on the motion to compel arbitration on September 8, 2011.  (Doc. No. 78.)  Following the hearing, the Court ordered supplemental briefing on September 13, 2011.  (Doc. No. 79.)  The parties submitted their supplemental briefs on September 27, 2011.  (Doc. Nos. 83, 84.)  The motion to compel arbitration is now ripe for disposition.

## II.    STANDARD OF REVIEW

The Federal Arbitration Act establishes a strong federal policy in favor of the arbitration of disputes such that any doubt regarding the scope of an arbitration agreement must be resolved in favor of arbitration.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983); Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003).  In spite of this presumption of arbitrability, prior to depriving a party of his day in court, there must be a finding that: (1) a valid agreement to arbitrate was entered; and (2) the claims at issue fall within the scope of the agreement.  Kaneff v. Del. Title Loans, 587 F.3d 616, 620 (3d Cir. 2009).  In making these determinations, the Court applies the same standard as it would when reviewing a motion for summary judgment, granting a motion to compel only if there is "no genuine issue of fact concerning the formation of the agreement to arbitrate."  Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 159 (3d Cir. 2009) (internal citations and quotations omitted). Accordingly, the Court must view the evidence and reasonable inferences drawn therefrom in a light most favorable to the non-moving party.  Id.  However, even if these requirements are satisfied, Section 2 of the Federal Arbitration Act provides that an agreement to arbitrate may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  AT&T Mobility, LLC v. Concepcion, 131 S. Ct. 1740, 1746 (2011).

## III.    DISCUSSION

In the present matter, Plaintiffs do not dispute that an agreement to arbitrate exists or that

the claims at issue here fall within the scope of that agreement.  Rather, Plaintiffs argue that (1) pursuant to Section 2 of the Federal Arbitration Act, Pennsylvania's unconscionability doctrine serves to invalidate the arbitration agreement; and (2) Defendants have waived their right to arbitrate the agreement by failing to move for arbitration until fifteen months after this action was commenced.  The Court will consider these arguments seriatim.

      **A.**        **Unconscionability**

As previously noted, an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  Concepcion, 131 S. Ct. at 1746.  Plaintiffs argue that under the Pennsylvania doctrine of unconscionability, as articulated in Thibodeau v. Comcast Corp., 912 A.2d 874, 885-86 (Pa. Super. Ct. 2006), the arbitration agreement at issue here is unenforceable.  Defendants counter that pursuant the Supreme Court's decision in Concepcion, 131 S. Ct. 1740, the Federal Arbitration Act preempts Thibodeau and Plaintiffs' argument must fail.

In Thibodeau, the Pennsylvania Superior Court declined to enforce an arbitration agreement contained in a Comcast Customer Agreement, where the agreement was included in a "take it or leave it" contract from a service provider with a government monopoly and where damages amounted to approximately $9.60 per month.  Id. at 885-86.  The Superior Court emphasized that the Federal Arbitration Act was not designed to "occupy the entire field of

6

arbitration agreements." Id. at 879.  Accordingly, applying 9 U.S.C. § 2, the Superior Court

analyzed the arbitration agreement pursuant to Pennsylvania's unconscionability doctrine.  Id. at

880.  The court concluded that the arbitration agreement was unenforceable because under the

laws of Pennsylvania, "where the arbitration clause is contained in an adhesion contract and

unfairly favors the drafting party, such clauses are unconscionable and must be deemed

unenforceable."  Id.  To that end, Plaintiffs argue that under Thibodeau the arbitration

agreement at issue here is unenforceable.

     Contrary to Plaintiffs' assertions, however, the Thibodeau rule is no longer good law

following Concepcion.  In Concepcion, the Supreme Court considered an appeal from the United

States Court of Appeals for the Ninth Circuit in which that court refused to enforce an arbitration

agreement on the grounds that it was procedurally and substantively unconscionable under the

law of the state of California as set forth in Discover Bank v. Superior Court, 113 P.3d 1100

(Cal. 2005).  The Supreme Court reversed the Ninth Circuit, holding that the Federal Arbitration

Act preempted the Discover Bank rule, and held that under the Federal Arbitration Act the

arbitration clause and its class action waiver were valid and enforceable.  Concepcion, 131 S. Ct.

at 1750.  The Supreme Court reasoned that the Federal Arbitration Act must preempt the

Discover Bank rule because the rule required the availability of classwide arbitration, which

undermines the central purpose of the Federal Arbitration Act.  Id. at 1753.

     The Discover Bank rule and the rule articulated in Thibodeau are strikingly similar.  The

Discover Bank rule provides that "class action waivers in consumer contracts of adhesion are

unenforceable, whether the consumer is being asked to waive the right to class action litigation

or the right to classwide arbitration."  Discover Bank, 113 P.3d at 1110; see also Concepcion,

7

131 S. Ct. at 1746 (defining the <u>Discover Bank</u> rule as a "rule classifying most collective-arbitration waivers in consumer contracts as unconscionable").  Similarly, <u>Thibodeau</u> held that "where the arbitration clause is contained in an adhesion contract and unfairly favors the drafting party, such clauses are unconscionable and must be deemed unenforceable." <u>Thibodeau</u>, 912 A.2d at 880 (concluding that mandating individual arbitration rendered the arbitration clause unconscionable).  Indeed, in <u>Thibodeau</u> the Superior Court expressly approved of the California law.  Relying on <u>Szetela v. Discover Bank</u>, 97 Cal. App. 4th 1094, 118 Cal. Rptr. 2d 862 (Cal. Ct. App. 2002), the Pennsylvania Superior Court in <u>Thibodeau</u> observed that "[t]he California Court of Appeals recently ruled on the identical issue presented in these cases, finding that forced individual arbitration by precluding class actions is so one-sided as to be 'blindingly obvious' and violated 'fundamental notions of fairness.' . . .  The court found that because the effect of the enforcement of the agreement was corporate immunity, preclusion of class action litigation was unconscionable." <u>Thibodeau</u>, 912 A.2d at 884.

   In light of the Supreme Court's rejection of the <u>Discover Bank</u> rule, a fair reading of <u>Concepcion</u> must lead the Court to conclude that <u>Thibodeau</u> cannot serve to invalidate an arbitration agreement.  Although the <u>Thibodeau</u> rule appears to address "the revocation of any contract," the rule in fact serves to invalidate agreements for the sole reason that they are agreements to arbitrate.  The <u>Thibodeau</u> rule articulates a clear preference against arbitration and in favor of class actions, concluding "[i]t is only the class action vehicle which makes small consumer litigation possible. . . .  Should the law require consumers to litigate or arbitrate individually, defendant corporations are effectively immunized from redress of grievances." <u>Thibodeau</u>, 912 A.2d at 885.  <u>Thibodeau</u> is, therefore, in conflict with both <u>Concepcion</u> and

Perry v. Thomas, which held that a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." Perry v. Thomas, 482 U.S. 483, 493, n.9 (1987).

The Court does pause briefly to note one possible distinction between Concepcion and the instant action, namely, that the present action concerns an employment contract rather than a consumer contract. However, upon a review of Concepcion, the Court is unable to discern any basis for limiting the effect of that case to consumer contracts, and Plaintiffs have provided none.[2] The Supreme Court in Concepcion spoke in broad language about arbitration agreements generally, without limiting its holding to the consumer contract context or carving out an exception for employment contracts. Further, the United States Court of Appeals for the Third Circuit has instructed that the Supreme Court's holding in Concepcion is "both broad and clear: a state law that seeks to impose class arbitration despite a contractual agreement for individualized arbitration is inconsistent with, and therefore preempted by the [Federal Arbitration Act], irrespective of whether class arbitration 'is desirable for unrelated reasons.'"

---

[2] The Court questioned the parties at oral argument regarding whether Concepcion could be limited to consumer contracts. (Doc. No. 81 at 16:1-3.) In response Plaintiffs were only able to cite to a California Superior Court case in which a divided court held that an arbitration agreement could not preempt the state Private Attorney Generals Act. Brown v. Ralphs Grocery Co., 197 Cal. App. 4th 489; 128 Cal. Rptr. 3d 854 (Cal. App. 2d Dist. 2011); but see Quevedo v. Macy's, Inc., No. 09-cv-1522, 2011 U.S. Dist. LEXIS 83046, at *49 (C.D. Cal. June 16, 2011) (concluding plaintiff's PAGA claims must proceed to arbitration). However, an action under the Private Attorney Generals Act "is an enforcement action, with one aggrieved employee acting as a private attorney general . . . . Such an action is fundamentally a law enforcement action." Brown, 197 Cal. App. 4th at 499 (internal citations and quotations omitted). The Superior Court went on to explain that "a law established for a public reason cannot be contravened by a private agreement." Id. at 500 (quoting Cal. Civ. Code § 3513). Because this matter concerns a private action, rather than a law enforcement action advanced by private individuals on behalf of the state, Brown cannot serve to invalidate the arbitration agreement at issue here.

Litman v. Cellco P'ship, No. 08-4103, 2011 U.S. App. LEXIS 17649, at *17 (3d Cir. Aug. 24,

2011) (quoting Concepcion, 131 S. Ct. at 1753)).  Accordingly, the Court must agree with those

courts that have applied Concepcion to uphold arbitration agreements in employment contracts.

See, e.g., Valle v. Lowe's HIW, Inc., No. 11-1489 SC, 2011 U.S. Dist. LEXIS 93639, at *16-17

(N.D. Cal. Aug. 22, 2011) (concluding a California case applying the Discover Bank rule to an

employment contract was no longer good law following Concepcion).

   There can be little doubt that Thibodeau is no longer viable following the Supreme

Court's decision in Concepcion.  Each Court that has considered the issue has held that in light

of Concepcion the Federal Arbitration Act preempts Pennsylvania's unconscionability doctrine.

See King v. Advance Am., No. 07-cv-237, 2011 U.S. Dist. LEXIS 98630, at *16 (E.D. Pa. Aug.

31, 2011); Black v. JP Morgan Chase & Co., 2011 U.S. Dist. LEXIS 99428, at *70 n.25 (W.D.

Pa. Aug. 25, 2011); Clerk v. Cash Cent. of Utah, LLC, No. 09-cv-4964, 2011 U.S. Dist. LEXIS

95494 (E.D. Pa. Aug. 24, 2011); Clerk v. Cash Am. Net of Nev., LLC, No. 09-cv-2245, 2011

U.S. Dist. LEXIS 95489 (E.D. Pa. Aug. 22, 2011); Alfeche v. Cash Am. Int'l, Inc., No. 09-cv-

0953, 2011 U.S. Dist. LEXIS 90085 (E.D. Pa. Aug. 12, 2011).  In the absence of any other

argument supporting the unconscionability of the instant arbitration agreement, the Court must

conclude that the arbitration agreement at issue here is valid.

   **B.**  **Waiver**

   Plaintiffs' second argument against enforcement of the agreement to arbitrate is that

Defendants have waived their right to enforce the agreement by delaying the invocation of the

arbitration agreement until well after this action was commenced.  Defendants counter that their

delay was excusable in light of Concepcion because that case "changed the whole landscape of

arbitration agreement and class arbitration agreements." (Doc. No. 81 at 22:14-16.)

"[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25. Accordingly, waiver is not to be lightly inferred. See, e.g., PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068-69 (3d Cir. 1995) (concluding that waiver should only be found "where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery"). In determining whether the right to arbitrate has been waived, the central question is whether the party arguing in favor of waiver has been prejudiced by the moving party's conduct. See Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 925 (3d Cir. 1992) (noting that "prejudice is the touchstone for determining whether the right to arbitrate has been waived" and concluding that defendant had waived their right to arbitrate by "actively litigating the case for almost a year prior to filing their motion to compel arbitration"). The Third Circuit has set forth a non-exhaustive list of six factors that should guide the waiver determination:

> (1) the timeliness or lack thereof of a motion to arbitrate; (2) the degree to which the party seeking to compel arbitration or to stay court proceedings pending arbitration has contested the merits of its opponent's claims; (3) whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; (4) the extent of its non-merits motion practice; (5) its assent to the trial court's pretrial orders; and (6) the extent to which both parties have engaged in discovery.

Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 223 (3d Cir. 2007) (internal citations omitted); see also Hoxworth, 980 F.2d at 926-27. Notably, "not all the factors need be present to justify a

finding of waiver, and the waiver determination must be based on the circumstances and context

of the particular case." Nino v. Jewelry Exchange, Inc., 609 F.3d 191, 209 (3d Cir. 2010)

(internal citations and quotations omitted).

At first glance Plaintiffs present a compelling case for waiver. Defendants failed to file

their motion to compel arbitration until fifteen months after the complaint was filed. The Third

Circuit has held that a fifteen month delay in filing a motion to compel arbitration "weighs

firmly in favor of waiver." Id. at 210. Defendants failed to refer to the arbitration clause in the

answer to their complaint. (Doc. No. 16.) Defendants have also engaged in some discovery and

have fully briefed Plaintiffs' two motions for class certification.

Plaintiffs' argument in favor of waiver unravels, however, when one considers the impact

of Concepcion on the waiver analysis. Plaintiffs do not dispute that the delay in Defendants'

filing the motion to compel was caused by the perceived unfavorable state of the law prior to

Concepcion. (Doc. No. 81 at 3:9-15.) Although Defendants waited fifteen months after

Plaintiffs filed the complaint before filing the motion to compel arbitration, the motion to compel

was filed just weeks after the Supreme Court issued its opinion in Concepcion on April 27, 2011.

Other courts of appeals, as well as the United States District Court for the Western District of

Pennsylvania, have held that an intervening change in the law may excuse an otherwise untimely

motion to compel arbitration. See, e.g., Nesslage v. York Sec., Inc., 823 F.2d 231, 234 (8th Cir.

1987) (finding no waiver after two years of litigation where motion to compel was filed shortly

after a Supreme Court opinion holding that the plaintiff's claims were subject to arbitration);

Benoay v. Prudential-Bache Secur., Inc., 805 F.2d 1437, 1440 (11th Cir. 1986) (concluding that

although the motion to compel was filed more than two years after the complaint was filed "the

motion was timely in light of a change in law affecting the parties' rights"); <u>Fischer v. A.G.</u>

<u>Becker Parabis, Inc.</u>, 791 F.2d 691 (9th Cir. 1986) (finding no waiver after three years of

litigation based on intervening Supreme Court precedent); <u>Kaliden v. Shearson Lehman Hutton,</u>

<u>Inc.</u>, 789 F. Supp. 179, 183 (W.D. Pa. 1991) (concluding that defendant did not "act[] in a

manner inconsistent with arbitration in light of the potential changes in the decisional law that

occurred during the pendency of the case").  Likewise, district courts in other circuits have held

that <u>Concepcion</u> represented an intervening change in the law justifying enforcement of an

otherwise untimely motion to compel arbitration.  <u>David v. Metron Servs.</u>, No. 4:10-cv-2052,

2011 U.S. Dist. LEXIS 101652, at *8 (E.D. Mo. Sept. 8, 2011) (finding no waiver where motion

to compel arbitration was filed on June 3, 2011, in a putative class action filed on October 28,

2010, because <u>Concepcion</u> represented an intervening change in law); <u>Estrella v. Freedom Fin.</u>,

2011 U.S. Dist. LEXIS 71606, at *14-*15 (N.D. Cal. July 5, 2011) (finding no waiver where

defendant first filed the motion to compel twenty-seven months after the complaint was filed but

only nineteen days after <u>Concepcion</u>).

   In the present matter, there can be little doubt that <u>Concepcion</u> represents a change in the

law of the Third Circuit.[3]  <u>See, e.g.</u>, <u>Litman v. Cellco P'ship</u>, No. 08-4103, 2011 U.S. App.

---

   [3] The Court invited the parties to provide supplemental briefing on the issue of whether
the Third Circuit's decision in <u>Gay v. CreditInform</u>, 511 F.3d 369 (3d Cir. 2007), undermines
Defendants' argument regarding an intervening change in law.  (Doc. No. 79.)  In <u>Gay</u>, the Third
Circuit noted that:

> To the extent, then, that <u>Lytle</u> and <u>Thibodeau</u> hold that the inclusion
> of a waiver of the right to bring judicial class actions in an arbitration
> agreement constitutes an unconscionable contract, they are not based
> "upon such grounds as exist at law or in equity for the revocation of
> any contract" pursuant to section 2 of the FAA, and therefore cannot
> prevent the enforcement of the arbitration provision in this case.

LEXIS 17649 (3d Cir. Aug. 24, 2011) (noting that the court of appeals is bound by its prior

holdings regarding class action waivers in the absence of a contrary en banc opinion or Supreme

Court decision and concluding that "[t]he Supreme Court's more recent opinion in Concepcion

works just such a change in the law").  Had Defendants filed the motion to compel arbitration

prior to Concepcion, Defendants risked this Court finding the arbitration agreement was

unconscionable under Thibodeau and either refusing to enforce the agreement or requiring

Defendants to pursue arbitration on a class basis.  The former result would have been

unsatisfactory to Defendants.  The latter result, for the reasons expressed in Concepcion, would

have been intolerable.  See Concepcion, 131 S. Ct. at 1751-52 (explaining that "class arbitration

greatly increases risks to defendants" by eliminating the procedural safeguards of appellate

review and also greatly increases the cost of arbitration by making "the process slower, more

costly, and more likely to generate procedural morass").  Accordingly, Defendants's delay is

excused by an intervening change in law, and their having filed the motion to compel arbitration

approximately six weeks after Concepcion weighs against a finding of prejudice.  See, e.g.,

Wood v. Prudential Ins. Co. of Am., 207 F.3d 674, 680 (3d Cir. 2000) (concluding a one-and-

one-half month delay was not prejudicial); Painewebber Inc. v. Faragalli, 61 F.3d 1063, 1069 (3d

---

Gay, 511 F.3d at 394-95.  The Third Circuit went on to note that "though the Pennsylvania cases
are written ostensibly to apply general principles of contract law, they hold that an agreement to
arbitrate may be unconscionable simply because it is an agreement to arbitrate."  Id. at 395.
However, because the court of appeals in Gay ultimately applied Virginia rather than
Pennsylvania law, the Third Circuit subsequently characterized Gay's findings regarding
Thibodeau as dicta.  Puleo v. Chase Bank USA, N.A., 605 F.3d 172, 177 n.2 (3d Cir. 2010);
Homa v. Am. Express Co., 558 F.3d 225 (3d Cir. 2009).  Although these characterizations of
Gay, themselves, appear to be dicta, neither party argued that Gay would have given Defendants
a basis for seeking enforcement of the arbitration agreement.

Cir. 1995) (concluding a two month delay was not prejudicial).

      The remaining factors paint a somewhat ambiguous picture.  Weighing against a finding of prejudice is the fact that Defendants never contested the merits of Plaintiffs' claims via a motion to dismiss or a motion for summary judgment.  Further, the only document filed by Defendants between the date of the <u>Concepcion</u> opinion was entered and the date on which Defendants moved to compel arbitration was a motion for leave to file a sur reply brief to Plaintiffs' motion for class certification on May 10, 2011.  (Doc. No. 61.)  In addition, discovery in this case was rather limited.  Defendants have represented that they have conducted depositions of Plaintiff Brown and Plaintiff Jury and made one request for documents resulting in thirty pages of disclosures from Plaintiffs.[4]  (Doc. No. 81 at 9:7-12.)  Weighing in favor of a finding of prejudice is Defendants' failure to indicate to the Court or Plaintiffs that the disposition of <u>Concepcion</u> may influence their decision to pursue arbitration.  The Supreme Court granted a writ of certiorari on May 24, 2010, two months after the complaint was filed and one week after Defendants filed their answer.  Defendants, represented by sophisticated counsel who indicated to the Court that he practices in California and is "very familiar" with the <u>Discover Bank</u> rule (<u>Id.</u> at 4:1-9), certainly would have been aware of the Supreme Court's decision to review that rule and could have informed Plaintiffs that if the Supreme Court reversed the Ninth Circuit that Defendants would revisit their decision to not seek arbitration.

      Ultimately, the Court finds that the six <u>Hoxworth</u> factors weigh against a finding of prejudice.  This is not a case in which the party moving for arbitration has tactically pursued a

---

     [4] Notably, the record suggests, and Plaintiffs do not dispute that they have received the benefit of discovery in that Defendants have disclosed "thousands and thousands of pages of documents."  (Doc. No. 81 at 9:13-18.)

case in court only to reverse course after availing himself of the court system proved unfruitful.

Rather, Defendants here appear to have acted in good faith, only seeking arbitration after it

became clear that, in the wake of Concepcion, that option had become available. The Court

further notes that when Plaintiffs were asked directly about the prejudice they suffered as a result

of Defendants' delay in seeking arbitration, they failed to identify any harm. At oral argument

the Court asked Plaintiffs's counsel, "In the time that this case has been pending in this Court,

what efforts have you undertaken on behalf of Plaintiffs that would not have been necessary had

this case gone to arbitration?" (Id. at 14:13-16.) Plaintiffs' counsel responded, "Honestly, I

can't think of any at this point." (Id. at 14:17-18.) When pressed again by the Court whether he

agreed with Defendants' regarding the lack of prejudice, Plaintiffs' counsel responded, "I

admitted that I wouldn't have done anything different in arbitration." (Id. at 24:4-13.) The

Third Circuit advises that "prejudice is the touchstone for determining whether the right to

arbitrate has been waived." Hoxworth, 980 F.2d at 925. Because Plaintiffs have failed to

demonstrate the existence of prejudice sufficient to justify a finding of waiver, the Court cannot

refuse to enforce the arbitration agreement on this basis.

## IV. CONCLUSION

Upon a review of all the arguments, the Court must grant Defendants' motion to compel

arbitration. There is no dispute that an arbitration agreement exists and that this dispute is

governed by that agreement. Plaintiffs' arguments regarding unconscionability are squarely

foreclosed by the United States Supreme Court's decision in Concepcion. Moreover, although

the Court is troubled that Defendants' motion to compel arbitration was not filed until fifteen

months after this action commenced, it is undisputed that the reason for this delay was that

16

<u>Concepcion</u> represented a significant change in the state of the law.  Because this intervening change in the law of this circuit excuses Defendants' delay, and because Plaintiffs have failed to demonstrate prejudice, the Court cannot find that Defendants waived their right to proceed to arbitration.  Accordingly, pursuant to 9 U.S.C. § 3, the Court will grant Defendants' motion to compel arbitration and stay all further proceedings in this matter pending the outcome of the arbitration of Plaintiffs' claims.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEPHEN BROWN, JR. and** | : | |
| **MATTHEW JURY, Individually and** | : | **Civil Action No. 1:10-CV-0514** |
| **on behalf of all others similarly situated,** | : | **Chief Judge Yvette Kane** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TRUEBLUE, INC., f/k/a LABOR** | : | |
| **READY, INC., and LABOR READY** | : | |
| **NORTHEAST, INC.,** | : | |
| **Defendants** | : | |

**ORDER**

      **AND NOW**, on this 22nd day of November 2011, **IT IS HEREBY ORDERED THAT**

Defendants' motion to compel arbitration (Doc. No. 63) is **GRANTED** and this action is

**STAYED** pursuant to 9 U.S.C. § 3, pending arbitration.  The parties are directed to file a joint

status report no later than January 31, 2012, apprising the Court of the status of this case.

                                     S/ Yvette Kane_____
                                       Yvette Kane, Chief Judge
                                       United States District Court
                                       Middle District of Pennsylvania