IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN BROWN, JR. and | : | |
| MATTHEW JURY, Individually and | : | Civil Action No. 1:10-CV-0514 |
| on behalf of all others similarly situated, | : | |
| Plaintiffs | : | Chief Judge Yvette Kane |
| | : | |
| v. | : | |
| | : | |
| TRUEBLUE, INC., f/k/a LABOR | : | |
| READY, INC., and LABOR READY | : | |
| NORTHEAST, INC., | : | |
| Defendants | : | |

**MEMORANDUM**

Currently pending before the Court is Plaintiffs' motion for reconsideration of this Court's November 22, 2011 order, or in the alternative, to grant an interlocutory appeal. (Doc. No. 86.) For the reasons stated more fully herein, the Court will deny the motion for reconsideration and deny the motion for leave to file an interlocutory appeal.

**I.     BACKGROUND**

   *1.     Factual Background*[1]

Defendants provide temporary staffing services, whereby Defendants send their employees to do work for a local business seeking short-term labor. (Doc. No. 1 ¶¶ 16, 23.) Defendants' employees report to a branch office by 7:00 a.m., where Defendants provide their employees with a work assignment. (Id. ¶ 24.) The employees are paid each day they work upon completion of the work day. (Id. ¶ 23.) When the employees have completed their work

---

[1] The parties do not dispute the Court's recitation of the factual background of this matter in its November 22, 2011 order. See Brown v. Trueblue, Inc., No. 1:10-cv-514, 2011 U.S. Dist. LEXIS 134523, at *2-6 (M.D. Pa. Nov. 22, 2011). Accordingly, for purposes of the motion for reconsideration, the Court has reproduced those facts in the instant memorandum.

1

for the day, they return to Defendants' branch office where they are given the option of being paid by check or by cash voucher. (Id. ¶ 28.) If an employee elects to use a cash voucher, the employee is given a voucher and a pin number, which the employee may redeem for cash at one of the cash dispensing machines located in the branch offices. (Id. ¶ 28.) Employees are charged a fee for using the cash dispensing machines totaling one dollar plus any change in the employee's net pay.[2] (Id. ¶¶ 28-29.) Plaintiffs, Defendants' employees, allege that the fees applied when using the cash dispensing machines often result in Defendants' employees being paid less than the prevailing minimum wage. (Id. ¶ 32.)

Both Plaintiffs Brown and Jury signed employment agreements. (Doc. Nos. 67-1, 67-2.) Those employment agreements included an "Employment and Dispute Resolution" section. That section included, as a condition of Plaintiffs' employment, an arbitration provision providing:

> 1. Arbitration, Waiver of Jury Trial. Labor Ready and I agree that any claim arising out of or relating to this Agreement, or the breach of this Agreement, or my application, employment, or termination of employment, shall be submitted to and resolved by binding arbitration under the Federal Arbitration Act. Labor Ready and I agree that all claims shall be submitted to arbitration including, but not limited to, claims based on any alleged violation of a constitution,

---

[2] For example, in the cash voucher submitted by Plaintiffs in support of their motion for class certification, the voucher lists Plaintiff Brown's daily gross pay at $58.00, representing eight hours of work at $7.25 per hour. (Doc. No. 27-8.) It lists deductions totaling $6.25, including $0.03 for Pennsylvania unemployment taxes, $0.84 for Medicare, $1.78 for Pennsylvania state withholding, and $3.60 for social security. (Id.) Plaintiff Brown's net pay is listed as $51.75. (Id.) The cash dispensing machine fee is listed as $1.75, representing one dollar plus the seventy-five cents in change in Plaintiff Brown's net pay. (Id.) Also included on the voucher is a statement that the cash dispensing machine charges a fee and if the employees do not wish to accept this fee, they may request a check. (Id.) The voucher further directs them to "[a]sk the branch employees where you may be able to cash Labor Ready payroll checks for no fee." (Id.)

>or any federal, state, or local laws; Title VII, claims of discrimination, harassment, retaliation, wrongful termination, compensation due or violation of civil rights; or any claim based in tort, contract, or equity. Any arbitration between Labor Ready and I will be administered by the American Arbitration Association under its Employment Arbitration Rules then in effect. Labor Ready agrees to pay for the arbiter's fees where required by law. The award entered by the arbitrator will be based solely upon the law governing the claims and defenses pleaded, and will be final and binding in all respects. In any claim or jurisdiction where this agreement to resolve claims by arbitration is not enforceable, Labor Ready and I agree to submit our claims for resolution by a bench trial (trial by judge) specifically waiving a jury as the ultimate fact finder.

(Id.)  Plaintiffs Brown and Jury signed and dated their employment agreements on September 23, 2008, and July 16, 2009, respectively.  (Id.)

The "Employment and Dispute Resolution" sections further included agreements to pursue relief via arbitration individually, rather than on a class basis.  Specifically, Plaintiff Brown's agreement provides:

>2. Class Actions.  In any such arbitration, or in a court of competent jurisdiction if arbitration is prohibited by law, neither Labor Ready nor I shall be entitled to join or consolidate claims as a representative or member of a class, representative, or collective action.

(Doc. No. 67-1.)  Plaintiff Jury's agreement, under the heading "2.  Representative Actions" provides that: "In any arbitration, or in a court of competent jurisdiction if arbitration is prohibited by law . . . . **I must give my written consent to be represented in a lawsuit against Labor Ready and I will not represent anyone else without their written permission.**" (Doc. No. 67-2 (emphasis in original).)

    2.    *Procedural History*

Plaintiffs initiated this civil action by filing a complaint on March 7, 2010, alleging violations of the Pennsylvania Minimum Wage Act, the Pennsylvania Wage Payment and

3

Collection Law, and the Fair Labor Standards Act. (Doc. No. 1.) Following the United States Supreme Court's ruling in AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740 (2011), Defendants filed a motion to compel arbitration. (Doc. No. 63.) The Court granted the motion on November 22, 2011. Brown, No. 1:10-cv-514, 2011 U.S. Dist. LEXIS 134523.

## II.   MOTION FOR RECONSIDERATION

On January 3, 2012, the National Labor Relations Board issued a ruling addressing the effect of Concepcion on labor contracts governed by the National Labor Relations Act. See In re D.R. Horton, Inc., 357 NLRB No. 184 (Jan. 3, 2012). The National Labor Relations Board held that "employers may not compel employees to waive their [National Labor Relations Act] right to collectively pursue litigation of employment claims in all forums, arbitral and judicial." Id. at *16 (emphasis in original). Prompted by this ruling, on January 17, 2012, Plaintiffs moved for reconsideration of this Court's order compelling arbitration. (Doc. No. 86.)

### A.   Standard of Review

A motion for reconsideration is a device of limited utility. Its purpose is to correct manifest errors of law or fact or to present newly discovered evidence. Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Accordingly, a party seeking reconsideration must demonstrate at least one of the following grounds prior to the court altering, or amending, a standing judgment: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court entered judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (citing N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)). A motion for reconsideration is appropriate in instances where the court

has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Rohrbach v. AT&T Nassau Metals Corp., 902 F. Supp. 523, 527 (M.D. Pa. 1995), vacated in part on other grounds on reconsideration, 915 F. Supp. 712 (M.D. Pa. 1996) (citation omitted). It may not be used as a means to reargue unsuccessful theories, or argue new facts or issues that were not presented to the court in the context of the matter previously decided. Drysdale v. Woerth, 153 F. Supp. 2d 678, 682 (E.D. Pa. 2001). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citation omitted).

  **B.**  **Discussion**

Plaintiffs do not directly challenge any holding in this Court's order compelling arbitration. Rather, in their motion for reconsideration, Plaintiffs seek to advance a new argument, namely, that the National Labor Relations Act renders the arbitration agreements at issue in the present matter void. The Court will first briefly review this Court's order compelling arbitration to consider whether any error is contained therein. The Court will then consider whether Plaintiffs present any grounds justifying reconsideration of the Court's order in their motion for reconsideration.

    *1.*  *Order Compelling Arbitration*

In response to the motion to compel arbitration, Plaintiffs did not dispute that an agreement to arbitrate existed or that the claims at issue fell within the scope of that agreement. Rather, Plaintiffs argued that: (1) Pennsylvania's unconscionability doctrine as articulated in

Thibodeau v. Comcast Corporation, 912 A.2d 874 (Pa. Super. Ct. 2006), rendered the arbitration agreement unconscionable per se; and (2) Defendants' waived their right to compel arbitration due to the delay in filing a motion to compel arbitration.[3]

The Thibodeau rule stood for the proposition that "if the costs associated with arbitrating a single claim effectively deny consumer redress, prohibiting class action litigation or class action arbitration is unconscionable." Thibodeau, 912 A.2d at 883. Relying on Concepcion, which held that state rules requiring the availability of classwide arbitration were preempted by the Federal Arbitration Act, 131 S. Ct. at 1753, the Court found that Thibodeau was no longer good law, holding that:

> [A] fair reading of Concepcion must lead the Court to conclude that Thibodeau cannot serve to invalidate an arbitration agreement. Although the Thibodeau rule appears to address "the revocation of any contract," the rule in fact serves to invalidate agreements for the sole reason that they are agreements to arbitrate. The Thibodeau rule articulates a clear preference against arbitration and in favor of class actions, concluding "[i]t is only the class action vehicle which makes small consumer litigation possible. . . . Should the law require consumers to litigate or arbitrate individually, defendant corporations are effectively immunized from redress of grievances." Thibodeau, 912 A.2d at 885. Thibodeau is, therefore, in conflict with both Concepcion and Perry v. Thomas, which held that a court may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." Perry v. Thomas, 482 U.S. 483, 493, n.9 (1987).

Brown, No. 4:10-cv-514, 2011 U.S. Dist. LEXIS 134523, at *13-14. The Court went on to note that one possible distinction between Concepcion and the instant action was that this matter concerned an employment contract rather than a consumer contract, which was at issue in

---

[3] The Court found that Defendants had not waived their right to arbitrate, and Plaintiffs do not challenge that conclusion in the present motion. Accordingly, the Court will not address that issue further.

Concepcion. Id. at *14-15. The Court questioned the parties on the issue at oral argument; however, Plaintiffs were unable to identify a relevant distinction. Id. at *15-16 n.2. Ultimately, because Plaintiffs' only argument on the issue of unconscionability was that Thibodeau rendered the arbitration agreement void as a matter of law, the Court held that the agreement was valid and enforceable. Id. at *16-17.

Shortly after Plaintiffs filed their motion for reconsideration, and after the National Labor Relations Board issued its decision in D.R. Horton, the United States Court of Appeals for the Third Circuit considered the identical issue raised in this matter. See Quilloin v. Tenet HealthSystem Phila., Inc., ___ F.3d ___, No. 11-1393, 2012 U.S. App. LEXIS 5353 (3d Cir. Pa. Mar. 14, 2012). In Quilloin v. Tenet HealthSystem, a nurse filed a claim in the Eastern District of Pennsylvania asserting a collective action against her employer pursuant to the Fair Labor Standards Act as well as a class action brought pursuant to the Pennsylvania Minimum Wage Act and the Pennsylvania Wage Payment and Collection Law. Quilloin v. Tenet HealthSystem Phila., Inc., 763 F. Supp. 2d 707, 711 (E.D. Pa 2011). Her employer filed a motion to compel arbitration based on the existence of an agreement to arbitrate. Id. The district court denied the motion to compel arbitration, relying in part on Thibodeau. Id. at 727. On appeal, the Third Circuit reversed, concluding that Thibodeau was "clearly preempted under Concepcion." Quilloin, 2012 U.S. App. LEXIS 5353, *25. In so doing, the Court explicitly agreed with this Court's order compelling arbitration in the above-captioned matter. Id. at *25 n.5 (citing Brown, 2011 U.S. Dist. LEXIS 134523). Accordingly, in light of the Third Circuit's holding in Quilloin, the Court cannot find that it erred in its analysis of Plaintiffs' arguments regarding the unconscionability of the arbitration agreements at issue here.

*2.    Whether the National Labor Relations Act Justifies Reconsideration*

Plaintiffs appear to concede that Quilloin precludes a finding that Concepcion does not preempt Plaintiffs' arguments regarding unconscionability. (Doc. No. 97.) Instead, in their motion for reconsideration they argue that the National Labor Relations Act prohibits employers from compelling employees to waive their right to pursue collective litigation of employment claims in both arbitral and judicial forums. Accordingly, they contend the agreement at issue in this matter is void pursuant to the National Labor Relations Act and reconsideration is warranted. The Court disagrees for both procedural and substantive reasons.

First, as a procedural matter, the Court finds Plaintiffs' arguments are not properly raised in a motion for reconsideration. Motions for reconsideration are not a vehicle for raising arguments or issues that could have been – but were not – presented to a court prior to its disposition of the matter in question. Johnson v. Diamond State Port Corp., 50 F. App'x 554, 560 (3d Cir. 2002) (quoting Brambles USA, Inc. v. Blocker, 735 F. Supp. 1239, 1240 (D. Del. 1990)). Plaintiffs' argument, that the National Labor Relations Act bars enforcement of the arbitration provision, was not presented to the Court when the Court was addressing the motion to compel arbitration. Plaintiffs contend that the argument could not have been raised because D.R. Horton, which they believe represents a change in controlling law, was decided more than a month after the Court granted the motion to compel arbitration, and thus, they were unable to raise the issue in response to the motion to compel arbitration.

As Plaintiffs suggested at oral argument, the implication of Plaintiffs' argument is that because the Court permitted Defendants to file a motion to compel arbitration at a very late date on the grounds that Concepcion represented a change in controlling law, Plaintiffs should

therefore also be permitted to raise an otherwise untimely argument based on a newly decided case. The two circumstances are, however, readily distinguishable. First, Concepcion represented a change in controlling law. That is, prior to Concepcion the law governing Defendants' motion, namely Thibodeau, almost certainly would have required the Court to deny the motion to compel arbitration or to compel Defendants to accept classwide arbitration of Plaintiffs's claims. Concepcion rejected that precedent, however, and Defendants were thus able to advance an argument that would have necessarily failed prior to Concepcion. In contrast, D.R. Horton cannot be interpreted as affecting a change in the law. Indeed, if Plaintiffs did argue that D.R. Horton supported an interpretation of the Federal Arbitration Act that conflicts with Concepcion, the Court would be required to reject the decision as conflicting with Supreme Court precedent. Ultimately, D.R. Horton must either represent a change in the law, in which case the Court would be constrained to reject it as conflicting with the precedent of the Supreme Court, or it must represent a consistent interpretation of Concepcion, in which case Plaintiffs could have presented the arguments relied on in D.R. Horton and those arguments would not be properly raised in a motion for reconsideration.[4] Accordingly, Plaintiffs' motion for reconsideration must necessarily fail as procedurally barred.[5]

---

[4] While Plaintiffs' motion would fail under either interpretation of D.R. Horton, the Court is convinced that the arguments raised by Plaintiffs which they base on D.R. Horton, could have been raised prior to that case being decided. Indeed, the Court invited the parties to make such arguments at oral argument when it asked them whether this case could be distinguished from Concepcion on the basis of this matter concerning an employment contract. Plaintiffs declined to do so in any meaningful way. The Court further observes that the arguments Plaintiffs contend are contingent on D.R. Horton were actually made in similar matters following Concepcion and prior to D.R. Horton. (See Doc. No. 90-1.)

[5] Defendants further contend that Plaintiffs' motion is untimely because it was filed more than fourteen days after the entry of this Court's order. See Pa. M.D. L.R. 7.10 (requiring

Even assuming there were no procedural bar to Plaintiffs' motion for reconsideration, the motion would still fail as a matter of law. First, because the arguments raised by Plaintiffs in their motion for reconsideration are based on the National Labor Relations Act, the Court finds that it is without jurisdiction to decide the issue. Plaintiffs argue that the classwide arbitration waiver contained in the arbitration agreements at issue in this matter are inconsistent with Section 7 of the National Labor Relations Act, which protects employees' right to engage in concerted action, and therefore Defendants violated Section 8(a)(1) of the Act by requiring their employees to sign the agreement. "[A]s a general matter," however, "neither state nor federal courts possess jurisdiction over claims based on activity that is 'arguably' subject to [Sections] 7 or 8 of the [National Labor Relations Act]." Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6, 493 U.S. 67, 74 (1989) (quoting San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 245 (1959)). Instead, the courts must defer to the "exclusive competence" of the National Labor Relations Board. Voilas v. Gen. Motors Corp., 170 F.3d 367, 378 (3d Cir. 1999) (citing Garmon, 359 U.S. at 245). Although Plaintiffs have not raised claims pursuant to the National Labor Relations Act in their complaint,[6] D.R. Horton, the decision upon which Plaintiffs exclusively rely, is premised entirely on the theory that Section 7 of the National Labor Relations Act requires the availability of classwide arbitration and thus the agreement violates

---

motions for reconsideration to be filed within ten days of the Court's order); see also Fed. R. Civ. P. 59(e) (requiring motions to alter or amend judgment to be filed within twenty-eight days of the entry of judgment). Because Plaintiffs filed their motion within fourteen days of the National Labor Relations Board's decision in D.R. Holder, the Court declines to deny the motion for reconsideration on this basis.

[6] Plaintiffs' failure to raise claims pursuant to the National Labor Relations Act provides yet another ground for denial of the motion for reconsideration, where the motion seeks to invalidate the arbitration agreement based solely on the National Labor Relations Act.

Section 8(a)(1) of the National Labor Relations Act. Therefore, pursuant to Garmon, this claim is within the exclusive jurisdiction of the National Labor Relations Board, and the Court is, therefore, without jurisdiction to address it.

Further, even if the Court had jurisdiction over Plaintiffs' National Labor Relations Act claims, and even if Plaintiffs had actually raised such claims, D.R. Horton would not serve as a bar to arbitration in this matter. The Court finds that D.R. Horton is more narrow than Plaintiffs suggest and that it does not apply to the agreement at issue here. In D.R. Horton, the National Labor Relations Board, after considering an arbitration agreement requiring all employment disputes to be resolved via individual arbitration, held in relevant part that:

> [E]mployers may not compel employees to waive their NLRA right to collectively pursue litigation of employment claims in all forums, arbitral and judicial. So long as the employer leaves open a judicial forum for class and collective claims, employees' NLRA rights are preserved without requiring the availability of classwide arbitration. Employers remain free to insist that arbitral proceedings be conducted on an individual basis.

357 NLRB No. 184, at *16 (emphasis in original). The agreements at issue here do not bar all class or collective actions. Both arbitration agreements prohibit classwide arbitration; however, they leave open the door to collective actions in other forums. (Doc. Nos. 67-1 at 1; 67-2 at 1.) These agreements appear to be entirely consistent with the holding of D.R. Horton, and Plaintiffs fail to explain why the provisions in the agreements relating to class action litigation do not cure the defect identified by the National Labor Relations Board in D.R. Horton.[7]

---

[7] Defendants also contend that D.R. Horton is void because only two members of the National Labor Relations Board decided the case. Thus, Defendants contend that the Board lacked a quorum. The D.R. Horton matter was assigned to three members of the National Labor Relations Board: Chairman Pearce and Members Becker and Hayes. In re D. R. Horton, Inc., 357 NLRB No. 184, at *1. Member Hayes, however, recused himself from the matter and did

**III.     MOTION FOR INTERLOCUTORY APPEAL**

In the alternative, Plaintiffs seek an interlocutory appeal of the order compelling arbitration.  A district court may only certify an order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) if the order: (1) concerns a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) for which an immediate appeal from the order will materially advance the ultimate termination of the litigation.  28 U.S.C. § 1292(b).  An order concerns a controlling question of law if: (1) an incorrect disposition would constitute reversible error; or (2) the question is "serious to the conduct of the litigation either practically or legally."  In re Chocolate Confectionary Antitrust Litig., 607 F. Supp. 2d 701, 705 (M.D. Pa. 2009) (quoting Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir. 1974)).  To satisfy the second prong, "genuine doubt must exist about the legal standard governing a particular case."  Id. at 705-06 (citations omitted); see also Couch v. Telescope Inc., 611 F.3d 629, 633 (9th Cir. 2010).  Finally, an immediate appeal will only be found to materially advance the termination of

---

not participate in deciding the merits of the case.  Id. at n.1.

> Section 3(b) of the National Labor Relations Act provides that:
>
>> The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise. . . . A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board, and three members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated pursuant to the first sentence hereof."
>
> 29 U.S.C. § 153(b).  The Supreme Court has acknowledged that the last sentence of this provision empowers a panel of the board to act where two members of a group assigned to a case will constitute a quorum if "for example, the third member had to recuse himself from a particular matter."  New Process Steel, L.P. v. NLRB, 130 S. Ct. 2635, 2639 (2010).  In light of this holding, the Court finds that the Board did have the necessary quorum to decide the case.

the litigation where an appeal could eliminate the need for trial, simplify the case, or reduce the cost of discovery.  Id. at 708 (citations omitted).

Plaintiffs' claim fails on the latter two prongs.  As discussed in the previous section, the Third Circuit's order in Quilloin indicates that the Court properly evaluated Defendants' motion to compel arbitration.  Plaintiffs' current argument is not based on an error alleged to have been made by this Court, but rather it is based on issues Plaintiffs never previously raised.  An interlocutory appeal, or any appeal for that matter, is not a vehicle for a party to explore new arguments and new theories of the case never raised before the district court.  Further, even if the Third Circuit were to reverse this Court's order compelling arbitration, the result would be beginning the case anew at the class certification stage.  Reversal would not eliminate the need for trial, simplify the case, or reduce the cost of discovery.  On the contrary, the case would become exponentially more complex, expensive, and time consuming.

Plaintiffs' motion for an interlocutory appeal does not challenge the order they seek to appeal.  Plaintiffs do not allege the Court erred in resolving the issues that were before it.  They do not allege the standards employed by the Court in addressing the arguments raised by the parties were unclear or unsettled.  Rather, Plaintiffs argue that if they had raised different arguments or framed their case in a different manner that questions would have arisen justifying an interlocutory appeal.  Such arguments do not warrant the certification of an order for interlocutory appeal.  Accordingly, the motion must be denied.

## IV.    MOTION FOR ADDITIONAL DISCOVERY

In their brief in reply to Defendants' brief in opposition, Plaintiffs for the first time raise the question of whether arbitration in this matter is prohibitively expensive, thereby depriving

them of the ability to effectively vindicate their statutory rights via arbitration. The Supreme Court has recognized that agreements to arbitrate may be deemed unenforceable in such circumstances. See Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 90 (2000). However, it is the party resisting arbitration who bears the burden of establishing that arbitration is not a proper means of resolving a claim. Id. (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991)). Failure to put forth evidence establishing that the high costs of arbitration will preclude a litigant from vindicating their statutory rights mandates a finding that allegations regarding costs are too speculative to justify invalidating an agreement to arbitrate. Id. at 90-91 (holding that plaintiff had failed to meet her burden of proving that the costs of arbitration would prevent her from vindicating her statutory rights pursuant to the Truth in Lending Act). In the present matter, Plaintiffs have failed to put forth any evidence supporting a finding that the costs of arbitration are prohibitively high. Accordingly, they have requested leave[8] to conduct discovery on the issue. (Doc. No. 91 at 23.)

The Court finds that even if it granted Plaintiffs leave to discover additional information, Plaintiffs would not be able to meet their burden of establishing that individual arbitration deprives Plaintiffs of the ability to vindicate their statutory rights. Plaintiffs have raised claims pursuant to the Fair Labor Standards Act, the Pennsylvania Minimum Wage Act, the Wage Payment and Collection Law, and the Check Casher Licensing Act. (Doc. No. 1.) These statutes provide for sufficient statutory remedies as to ensure that individual arbitration is not

---

[8] Plaintiffs have not actually filed a motion for discovery on the issue as required by Rule 7 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). This failure alone would justify denial of Plaintiffs' request. The Court will, however, address the issue on the merits.

prohibitively expensive. Pursuant to the Fair Labor Standards Act, Plaintiffs are entitled to damages "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Moreover, the statute mandates that a reasonable attorney's fee in addition to the cost of the action be paid by the defendant in such actions where the plaintiff prevails.[9] Id. Significantly, the Fair Labor Standards Act's damages provisions and provisions for attorney's fees and costs apply even in arbitration. See Adkins v. Labor Ready, Inc., 303 F.3d 496, 502 (4th Cir. 2002) (citing Gilmer, 500 U.S. at 27-28) (explaining that because litigants retain all substantive statutory rights in an arbitral forum, plaintiffs prevailing under the Fair Labor Standards Act would be awarded attorney's fees and costs even if the case were sent to arbitration and holding that plaintiff had failed to establish that the costs of arbitration rendered the arbitration agreement void). As a result of the statutory damages provisions as well as the cost- and fee-shifting provisions in the Fair Labor Standards Act, the Court finds no basis for concluding that arbitration would be prohibitively expensive.

Plaintiffs, citing Blair v. Scott Specialty Gases, note that the Third Circuit has ordered discovery on the issue of whether the cost of arbitration is prohibitively high in other cases and

---

[9] In addition to the damages and fees provisions in the Fair Labor Standards Act, the remaining claims raised by Plaintiffs also raise the possibility of significant, albeit largely redundant, means of recovery. Under the Check Casher Licensing Act, a plaintiff may recover statutory damages of $250 or damages in the amount of three times actual damages, whichever is greater, as well as attorney's fees and costs. 63 Pa. Stat. § 2329. Violations of the Wage Payment and Collection Laws permit recovery of liquidated damages in the amount of $500 or twenty five percent of wages owed, whichever is greater. 43 Pa. Stat. § 260.10. Plaintiffs are also permitted to recover attorney's fees and costs under the Wage Payment and Collection Laws. 43 P.S. § 260.9a(f). Likewise, violations of Pennsylvania's Minimum Wage Act entitle a plaintiff to damages plus a reasonable attorney's fee in addition to costs. 43. Pa. Stat § 333.113.

that the Court should do so in this case. 283 F.3d 595 (3d Cir. 2002). The decision in Blair, however, is distinguishable from the present matter. In Blair the Court of Appeals found that remand for further discovery was warranted "in light of [the plaintiff's] affidavit of her limited financial capacity, the evidence that the AAA would preside over the arbitration, and the AAA rules requiring the parties to bear equally the costs of the arbitrator's fees." Id. at 610. Moreover, the arbitration agreement at issue in Blair included a fee-splitting provision in which the plaintiff would be required to pay half the costs of the arbitration. Id. at 605.

In the present matter, Plaintiffs have failed to put forth an affidavit of their financial inability to pay the arbitration fees as was done in Blair.[10] Nor have Plaintiffs indicated what filing fees or arbitrator's fees, if any, Plaintiffs will bear the burden of paying. Accordingly, Plaintiffs seek discovery based on nothing more than sheer speculation, which is made all the more troubling by the fact that the information Plaintiffs seek to discover is likely entirely within their possession. See Adkins, 303 F.3d at 503 (affirming a district court's decision to compel arbitration and noting that plaintiff's complaint that "the district court cut off discovery" on the issue of cost because it was within plaintiff's power, absent discovery, to determine the amount of money at stake and the cost of arbitration, noting that plaintiff "cannot seriously claim to be in court because the arbitration fee is too high at the same time that he pleads ignorance about what the actual amount of the arbitration fee might be").

In addition to Plaintiffs' alleged costs being entirely speculative, a second critical

---

[10] The affidavit in Blair "set[] forth the amounts of [plaintiff's] assets (her car and house), monthly income, debt, and monthly bills. The affidavit indicate[d] that her monthly bills exceed her monthly income by $182 per month and that her debt exceed[ed] her assets by $57,000." Id. at 608 (citations to the record omitted).

distinction between this matter and Blair, is that Blair involved an arbitration agreement where the parties agreed to share the costs. In the present matter no such agreement has been alleged. To the contrary, Defendants have represented that they have paid one hundred percent of the filing fees. (Doc. No. 94 at 6.) Further, the arbitration agreements submitted previously indicate that Defendants agree to "pay for the arbiter's fees where required by law" and that the arbitration would be "administered by the American Arbitration Association under its Employment Arbitration Rules then in effect." (Doc. Nos. 67-1 at 1; 67-2 at 1.) The parties do not address the issue; however, it appears that the American Arbitration Association's Employment Arbitration Rules provide that the employer "shall pay the arbitrator's compensation." Because Defendants will apparently pay all the fees associated with arbitration, discovery would serve absolutely no purpose in this matter.[11] See Livingston v. Assocs. Fin., Inc., 339 F.3d 553, 557 (7th Cir. 2003) (reversing a district court and concluding that a plaintiff could not argue that costs associated with arbitration were prohibitively high were the defendant had agreed to pay the costs); Large v. Conseco Fin. Servicing Corp., 292 F.3d 49, 56 (1st Cir. 2002) (concluding that a plaintiff could not show the costs of arbitration were prohibitively high where the defendant had agreed to pay the costs). Accordingly, the request for additional discovery must be denied.

## V. CONCLUSION

Plaintiffs' motion raises policy concerns that touch on important issues of access to legal remedies. The Court must emphasize, however, that the motion currently pending before the

---

[11] Even if this were not the case, the Court is satisfied that the cost- and fee-shifting provisions in the Fair Labor Standards Act adequately ensure that the costs of individualized arbitration are not prohibitively high.

Court is a motion for reconsideration. Such motions are to be used sparingly and in limited circumstances. The main thrust of Plaintiffs' argument is that an intervening change in the controlling law, namely the decision by the National Labor Relations Board in D.R. Horton, justifies reconsideration of this Court's order compelling arbitration. Plaintiffs fail, however, to establish that D.R. Horton does in fact represent a change in controlling law. They raise no arguments in the present motion that could not have been raised in response to the motion to compel arbitration. To the extent Plaintiffs contend that D.R. Horton represents a departure from the Supreme Court's decision in Concepcion, the Court would be constrained to reject such an interpretation as inconsistent with binding Supreme Court precedent. Further, Plaintiffs raise arguments based on the National Labor Relations Act; however, they do not present any claims based on the Act, and the Court questions whether it would have jurisdiction to consider them if they did. Finally, even if the Court were not presented with significant procedural and jurisdictional bars to the consideration of Plaintiffs' arguments, the Court cannot find that D.R. Horton would actually compel a different result. Accordingly, for the reasons stated in the foregoing memorandum, the Court must deny Plaintiffs' motion for reconsideration. The action will remain stayed pending the resolution of Plaintiffs' claims in the arbitral forum.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN BROWN, JR. and | : | |
| MATTHEW JURY, Individually and | : | Civil Action No. 1:10-CV-0514 |
| on behalf of all others similarly situated, | : | |
|     Plaintiffs | : | Chief Judge Yvette Kane |
| | : | |
| v. | : | |
| | : | |
| TRUEBLUE, INC., f/k/a LABOR | : | |
| READY, INC., and LABOR READY | : | |
| NORTHEAST, INC., | : | |
|     Defendants | : | |

## ORDER

AND NOW, on this 16th day of April 2012, **IT IS HEREBY ORDERED THAT** Plaintiffs' motion for reconsideration (Doc. No. 86) is **DENIED** and this matter shall remain stayed pursuant to 9 U.S.C. § 3, pending arbitration. The parties are directed to file a joint status report no later than June 29, 2012, and every sixty days thereafter, apprising the Court of the status of this case.

                                              S/ Yvette Kane
                                              Yvette Kane, Chief Judge
                                              United States District Court
                                              Middle District of Pennsylvania